CHEON SU KIM, Appellant

v.

STAR-KIST SAMOA, Inc., Appellee

High Court of American Samoa
Appellate Division

AP No. 9-88

October 20, 1988

Before REES, Chief Justice, KING*, Acting Associate Justice, KAY**, Acting Associate Justice, LUALEMAGA, Associate Judge, and OLO, Associate Judge.

Counsel: For Appellant, William Reardon
         For Appellee, Togiola T.A. Tulafono

REES, C.J.:

Appellant Cheon Su Kim, a Korean fisherman, was struck by a forklift being driven by an employee of appellee Star-Kist. The accident occurred on a dock adjacent to the Star-Kist cannery. The boat on which Kim was employed was at the dock to unload its catch. Kim was returning from the restroom facilities provided by Star-Kist for the use of the fishermen, and he stopped on the dock to talk with someone on board a vessel tied up alongside the dock. While thus engaged he was run over by the forklift. He suffered injuries including facial lacerations and contusions, a crushed rib cage, and fractures of the cheek bone, eye socket, femur, and pelvis.

The trial court found the accident to have been caused by the joint negligence of the forklift driver and of appellant Kim. The forklift was carrying a scow overloaded with garbage, obstructing the driver's vision. The dock was cluttered with stacks of such scows, further obstructing vision and leaving only narrow

---

* Honorable Samuel P. King, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

** Honorable Alan C. Kay, Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

147

corridors to be shared by forklift and pedestrian traffic. The court found that proper attention by the driver could have avoided the accident.

On the other hand, the trial court found itself "unable [to] understand why the accident happened with plaintiff caught unaware, unless of course he was to that degree so rapt in conversation with others so as to render him completely unmindful of his locale, and the attendant risks . . . ." The court concluded that the accident was 60% attributable to the negligence of the driver and 40% to the negligence of Kim.

## I.   Negligence of Appellant

Kim appeals from the finding that he was negligent. His counsel takes issue principally with an observation by the trial court that "a wharf servicing vessels . . . is not the place for social discourse and casualness." Counsel points out that the record does not reflect whether the conversation was of a social or business nature. This was not, however, the sole basis on which the trial court found Kim to have been negligent. The court also observed that Kim was a seasoned fisherman and a ranking deck hand who was or should have been familiar with the dangers that attend unloading fish on a wharf, where "forklifts and like machinery on a dock are apt to move willy nilly." Moreover, whether the conversation was of a business or social nature does not appear to have been crucial to the trial court's determination that Kim was paying too much attention to his conversation and not enough to the passing forklifts.

Even so, and even making allowances for the trial judge's ability to judge the demeanor of the witnesses and the nuances of live testimony, we do not believe there was sufficient evidence in the record to justify a finding that Kim was negligent. He was in a place --- en route from the restroom to the boat --- where he had a right to be. The undisputed evidence is that he was facing away from the forklift until a moment before the collision, when he "attempted to start walking and at the same time looked and he got struck." Tr. 171. If there were anything in the record to support an inference that the forklift would not have run Kim over if he had been walking rather than talking, we would not

148

overrule such an inference on the part of the trial court. On the contrary, however, the record supports the trial court's conclusion that the forklift driver would have run over a person in the spot where Kim was standing regardless of what that person was doing.

Although counsel for Star-Kist theorizes that Kim may have stepped backward into the path of the forklift, the trial court did not so conclude and it is doubtful whether the evidence would support such a conclusion. The trial court's finding that the driver was negligent is supported by testimony that the scow was overloaded so as to block his vision, and by an exhibit consisting of an internal Star-Kist report recounting the testimony of the same witness to the same effect. Once Kim had proved the negligence of the driver, the burden was on Star-Kist to present evidence on the basis of which the court could conclude that Kim's own negligence contributed to the accident. In the absence of such evidence, the attribution of negligence to Kim amounts not to a finding of fact or an inference from the facts but to a legal conclusion equivalent to the imposition of strict liability on experienced fishermen who venture onto wharves. Accordingly, we reverse this part of the trial court's opinion.

## II. Independent Negligence of Star-Kist

Appellant also argues that the trial court failed to rule on whether Star-Kist itself was negligent in failing to provide a traffic control system on the wharf. If the Court had found such negligence on the part of Star-Kist in addition to the negligence of the forklift driver, it might have affected the calculation of the extent to which Kim's negligence caused the accident.

We note, however, that appellant did not raise this issue in his motion for a new trial. He did allude in a memorandum to the absence of traffic controls or safety precautions, but this was solely in support of a contention that the trial court erred in finding Kim negligent at all. We are therefore without jurisdiction to reverse the trial court on the ground that it did not find Star-Kist independently negligent.

A motion for new trial is a statutory prerequisite to an appeal. A.S.C.A. § 43.0802. All motions must "state with particularity the grounds therefor." T.C.R.C.P. Rule 7. This is particularly important in the case of a motion for new trial, one of whose purposes is to avoid unnecessary appeals by alerting the trial court to possible errors or omissions in its opinion.

This case illustrates the wisdom of providing such a procedure. If the appellant in this case had pointed out to the trial court that its opinion did not address the question of Star-Kist's independent negligence, the trial court would presumably have proceeded to address the question. The trial court might have found Star-Kist independently negligent and reduced the comparative negligence of Kim accordingly; it might have found independent negligence and yet, upon reassessment of all the facts, not reduced Kim's comparative negligence; or it might have found no independent negligence. In any case the trial court would have had the opportunity to explain its position, and the reviewing court would not be left to speculate about why the question was not addressed.

Our finding that appellant was not negligent, however, effectively relieves him of the consequences of his failure to allege independent negligence as a ground for new trial. He will now be at least as well compensated for his injuries as he would have been if the trial court had found Star-Kist independently negligent.

### III. Damages

Appellant also urges that the damages awarded for pain and suffering ($80,000) and for diminished earning capacity ($15,000) were too low.

The court found that Kim's eye socket injury would prevent him from working as a fisherman, since the constant exposure to wind and water presented the risk of further injury to the eye. He is, however, able to engage in any occupation not presenting such risks. Kim is 48 years old. There was evidence that fishermen at his level generally make about $14,000 per year; the evidence concerning the terms of his own employment would have supported an even lower figure. It was also unclear whether Kim would have continued to be

employed as a fisherman at the conclusion of his current contract if the accident had not occurred. The trial court's estimate of $15,000 in diminution of future earnings was not clearly erroneous.

With regard to damages for pain and suffering, appellant contends that $80,000 is lower than courts in most American jurisdictions would award in the circumstances of the present case. This may be true; it is also probably true that $80,000 is higher than most other Pacific jurisdictions would award. None of these attempts to put a dollar value on human suffering is objectively right or wrong. The disparity from place to place is accounted for by many factors, including variations in the amount of goods and services that money can buy and in social attitudes toward pain. That trial judges in American Samoa tend to award lesser sums than those in Texas or California no more suggests that awards in Samoa should be higher than that those in Texas should be lower.

The award we are reviewing, as it happens, is one of the largest awards for pain and suffering in the history of American Samoa. It is beyond our authority to increase the award unless it was clearly erroneous. A.S.C.A. § 43.0801. It was not.

Conclusion

The decision of the trial court is reversed insofar as it found the damages to have been partly attributable to the negligence of the appellant. In all other respects the decision is affirmed.

It is so ordered.